# FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT
## UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

### IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF ARKANSAS
### _____ DIVISION

SYLVESTER O. BARBEE
(Enter above the full name of the Plaintiff
in this action.)

**US DISTRICT COURT**
**WESTERN DIST ARKANSAS**
**FILED**

**DEC 0 3 2015**

DOUGLAS F. YOUNG, Clerk
By _____
       Deputy Clerk

Prisoner ID No. 13131
(Do Not Put Your Social Security Number)

V.

CASE NO. 15-5290

_____

_____

_____

(Enter above the **full** name of the Defendant,
or Defendants, in this action.)

I.    **Previous Lawsuits**

   A.    Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action?

      Yes   **X**      No   _____

   B.    If your answer to A is yes, describe each lawsuit in the space below including the **exact Plaintiff name or alias used.** (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

      1.    Parties to previous lawsuit

      Plaintiffs: SYLVESTER O. BARBEE

      Defendants: CHERI ELLIS, MARIE AUSTEN, AUNDREA WEEKLY

      2.    Court (if federal court, name the district; if state, name the county):

      EASTERN DISTRICT

      3.    Docket number: 5:14-CV-00265

      4.    Name of judge to whom case was assigned: J. LEON HOLMES

      5.    Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?) STILL PENDING

      6.    Approximate date of filing lawsuit: ~~J. LEON HOLMES~~ JULY 7, 2014

      7.    Approximate date of disposition: _____

**(Revised 04/2015)**

II.     **Place of Present Confinement:** ~~Eastern Ark. Regional Unit~~

III.    There is a written prisoner grievance procedure in the Arkansas Department of Correction and in your county jail. <u>Failure to complete the grievance procedure may affect your case in federal court.</u>

      A.     Did you present the facts relating to your complaint in the state or county written prisoner grievance procedure?

              Yes   __x__         No  _____

      B.     If your answer is YES, attach copies of the most recent written grievance(s)/response(s) relating to your claims showing completion of the grievance procedure. <u>**FAILURE TO ATTACH THE REQUIRED COPIES MAY RESULT IN THE DISMISSAL OF YOUR COMPLAINT.**</u> If copies are not available, list the number assigned to the grievance(s) and the approximate date it was presented.

      C.     If your answer is NO, explain why not: _____

             _____

             _____

IV.     **Parties**

      **(In item A below, place your name in the first blank and place your present address in the second blank.)**

      A.     Your Full Name: ~~Sylvester O. Barbee~~

              Address: ~~P.O. Box 970, Marianna, Ar 72360~~

      **(In Item B below, place the <u>full</u> name of the Defendant in the first blank, his official position in the second blank, his place of employment in the third blank, and his address in the fourth blank.)**

      **Do Not List Witnesses.**

      **You may not name the jail as a Defendant. The jail is a building and cannot be sued.**

      B.  Read carefully and fill out all information sought.

           <u>1. Defendant #1</u>

           Full Name: ~~Troy Moore~~

           Position: ~~Cummin(s) Unit Physician~~

           Place of Employment: ~~Cummin(s) Unit~~

           Address: ~~D/N~~

**2.  Defendant #2**

Full Name: _Angelika Smartjest_

Position: _Overseer OF Kitchen Operation(s)_

Place of Employment: _Cummin(s) Unit_

Address: _D/N_

**3.  Defendant #3**

Full Name: _Marie Austin_

Position: _Health Service(s) Administrator_

Place of Employment: _Central Office_

Address: _D/N (Pine Bluff)_

**4.  Defendant #4**

Full Name: _____

Position: _____

Place of Employment: _____

Address: _____

**5.  Defendant #5**

Full Name: _____

Position: _____

Place of Employment: _____

Address: _____

**6.  Defendant #6**

Full Name: _____

Position: _____

Place of Employment: _____

Address: _____

_____

**V.**   **At the time of the alleged incident(s), were you:**
(check the appropriate blank)

_____   in jail and still awaiting trial on pending criminal charges
__X__   serving a sentence as a result of a judgment of conviction
_____   in jail for other reasons (*e.g.*, alleged probation violation, etc.)

Explain: __P_____

_____

Please provide the date of your conviction or probation or parole revocation:

_____3-10-15_____

**VI.**   **Statement of Claim**

State every ground on which you claim that one or more of the Defendants violated your federal constitutional rights. For example, if you have an excessive force claim and a denial of medical care claim, you must fill out a separate section for each different claim. This section should be limited to the facts of your claim.

With respect to each claim, briefly describe the actions taken by each Defendant who you believe was involved in violating your rights. Include also the names of other persons involved, dates and places. Do not give any legal arguments or cite any cases or statutes. (Use as much space as you need. Attach extra sheets if necessary.)

Claim Number # 1:

Type of Claim (for example: excessive force, denial of medical care, etc.):

Inadequate Safety, Sanitation, Food Service(s) Food Procurement, & Medical Care (Deliberate Indifference)

Date of the Occurrence: August of 2012

Name of each Defendant involved: _____

_____

_____

_____

(A) With respect to Defendant (Name) Troy Moore_____, describe the acts or omissions of this Defendant that form the basis for claim #1 and any harm caused by it.

I Contracted Two Strain(s) of Salmonella, Which One That Was Identified In The Cummin(s) Unit HenHouse Aka Confirmed To Be Within me Through The Ark. Dept. of Health(s) Laboratory Analysis That he Requested Both Time(s) (Akatum

And Cerro). I Had The Salmonella Contraction For (59) Day(s) W/o ANY Form OF Medical Care That I Am Entitled To When Being Held Against MY Will BY The State, Also AN Official Ark. Dept. OF Health Document (See Ex. F-b OF 5:14-CV-00265) Clearly State(s) Abnormal Case(s) OF Salmonella Are To Be Treated With Antibiotic(s) And Typical Case(s)

Are you suing **this** Defendant in his or her: (check the appropriate blank) Only Last (4 to 7) Day(s) (See Attached Ad. Reg. #833 (II,III,B,C,D,(v),(vi) ¢(I))

_____ official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

__X__ personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

_____ both official and personal capacity

**If you are asserting an official capacity claim**, please describe the custom or policy that you believe caused the violation of your constitutional rights.

_____

_____

_____

_____

_____

_____

**(B)  With respect to Defendant (Name)** Angelika Smartessi **, describe the acts or omissions of this Defendant that form the basis for claim #1 and any harm caused by it.**

Administrative Regulation 600 And Declaration Swork BY Her Clearly State(s) She Failed To Ensure Food Service(s), Preparation, Storage And Food Order(s); Also Proper Food Delivery(s) Were Adequately Safe And Sanitary, As Well As Inspection(s) That Are Officially Her Job Dutie(s) And Responsibilitie(s); That Knowing Caused A Wide Spread OF Salmonella, Which I Was Still Serving Food While Having One OF The Named Serotype(s) (See Ex. B OF 5:14-CV-00265) That Knowingly Infected (214) Inmate(s) And (3) Employee(s) Due To Her Facilitating The Service(s) OF Contaminated Food To The Inmate

Are you suing **this** Defendant in his or her: (check the appropriate blank) And Employee Population, Clearly Being Personally Involved.

_____ official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

__X__ personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

_____ both official and personal capacity

**If you are asserting an official capacity claim**, please describe the custom or policy that you believe caused the violation of your constitutional rights.

_____

_____

_____

_____

_____

_____

**(C)  With respect to Defendant (Name)** MARIE AUSTIN **, describe the acts or omissions of this Defendant that form the basis for claim #1 and any harm caused by it.**

After The Contraction ᵒᶠ Salmonella And Request For Laboratory Confirmation ᵒᶠ Such Contraction⁽⁴⁾ To NO AVAIL Did Ms. Austin Ensure Pursuant To Administrat -ive Regulation #833 That The Variety ᵒᶠ Good⁽ˢ⁾ Service⁽ˢ⁾, Personnel And Procedure⁽ˢ⁾ Involved In Providing The Full Range ᵒᶠ Prevention, Evaluation And Treatment, That Knowingly Would Have Alleviated My Pains & Suffering With The Proper Antibiotic⁽ˢ⁾ As Stated By The Ark. Dept. ᵒᶠ Health (See Ex. F-L ᵒᶠ 5:14-CV-00265). Ms. Austin Was Aware, But Deliberately & Callously Disregarded My Serious Med. Need And The Official

**Are you suing this Defendant in his or her: (check the appropriate blank)** Ark. Dept. Of Health⁽ˢ⁾ Official

Documented Protocal When Dealing With

____   official capacity only (An official capacity claim is the same as suing the governmental Salmonella entity this Defendant works for and requires proof that a custom or policy of the Contraction⁽⁴⁾ governmental entity caused the alleged violation.)

_X_   personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

____   both official and personal capacity

**If you are asserting an official capacity claim**, please describe the custom or policy that you believe caused the violation of your constitutional rights.

_____

_____

_____

_____

_____

_____

**If you are asserting an official capacity claim**, please describe the custom or policy that you believe caused the violation of your constitutional rights.

_____

_____

_____

_____

_____

_____

## VII.   Relief

If you are seeking to recover damages from the named Defendants, check the appropriate blank or blanks below for the type or types of damages that you are seeking:

X   **Compensatory damages** (designed to compensate persons for injuries, such as physical pain and suffering, etc., that are caused by the deprivation of constitutional rights)

X   **Punitive damages** (designed to punish a Defendant for engaging in misconduct and deter a Defendant and others from engaging in such misconduct in the future)

State briefly below any other relief you are seeking in this action. **Make no legal arguments. Cite no cases or statutes.**

1). As To Physician Troy Moore, I Am Requesting For Punitive Damage(s) In The Sum of $250,000 And Compensatory Damage(s) In The Sum of $200,000.

2). As To Angelika Smartjessi, I Am Requesting For Punitive Damage(s) In The Sum of $350,000 And Compensatory Damage(s) In The Sum of $250,000.

3). As To Marie Austin, I Am Requesting For Punitive Damage(s) In The Sum $250,000 And Compensatory Damage(s) In The Sum of $200,000.

I declare under penalty of perjury (18 U.S.C. § 1621) that the foregoing is true and correct.

Executed this ___10___ day of ___November___, 20__15__.

SYLVESTER O. BARREE
**Printed Name of Plaintiff**

Sylvester O. Barlee
**Signature of Plaintiff**

**UNIT LEVEL GRIEVANCE FORM**                                    **Attachment I**

Unit/Center _EARU_

Name _SYLVESTER O. BARBEE_

ADC# _13134_     Brks # _7-36_   Job Assignment _B10_

```
┌─────────────────────────────┐
│      FOR OFFICE USE ONLY     │
│  GRV. # EA-15-01359          │
│  Date Received 6/25/2015     │
│  GRV. Code #: 501            │
└─────────────────────────────┘
```

_6-18-15_ (Date) STEP ONE: Informal Resolution

_6-21-15_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)

If the issue was not resolved during Step One, state
why: Due To The Fact That A.R. 600 Wasn't Implemented, Which Has Caused ME To Have Adverse Reaction IN My Stom-
-ach Since I Contracted The Serotype(s) Cerro (Date) & Anatum That I Now Have To Be Seen By A Dr. Thru The Sick Call
EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to Procedure, Pur A.R. #833 (C,D); (VI)(A).
a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a
serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will
sign the attached emergency receipt. If an Emergency, state why:

_____

_Is this_ Grievance concerning Medical or Mental Health Services? _NO_ _If yes, circle one: medical or mental_
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, and place, name of
personnel involved and how **you** were affected. (Please Print): (Refer To Cummins(s) Grv. Administration)
Administrative Reg. 600 State(s) Clearly That Angelika Smartess Is To Ensure, As Well As Employee(s)
Involved & Associated With The Food Service Dept. In Procurement, Storage, Preparation, Also The
Utilization Of Food Service Supplies Are To Ensure Tasteful, Nutritious Meal(s) And Implement The
Safety & Sanitation Requirement(s) For Food Service Program(s) Which Ms. Smartess Did Not By
Hundred Degree Area At The Annual Set E.c.(s) At The Set Degree Of 44°
In The Kitchen That Is To Meet Established Federal & State Code(s) Requirement(s) This Reckless
Disregard Caused Food Borne Disease That I Contracted Cerro & Anatum Serotype(s) For 59 Day(s)
_Sylvester O. Barbee_                                   _6-18-15_
Inmate Signature                                          Date
_If you are harmed/threaten because of your use of the grievance process, report it immediately to the Warden or_
_designee._

                    **THIS SECTION TO BE FILLED OUT BY STAFF ONLY**
This form was received on _6/20/15_ (date), and determined to be **Step One** and/or an Emergency
Grievance _Yes_ (Yes or No). This form was forwarded to medical or mental health? (Yes or No). If yes, name
of the person in that department receiving this form: _____ Date _____
_Carlton A.N.W._  _35356_  _Ruby Cable_  _6/20/15_
PRINT STAFF NAME (PROBLEM SOLVER)   ID Number   Staff Signature   Date Received
Describe action taken to resolve complaint, including **dates**:
Your issue is beyond the scope of this unit and
by statement P3 besides you have fifteen day to file
and Informal you must follow proceed
_6/21/15 Sgt. Law_
Print and Sign Staff Name & Date Returned   Inmate Signature & Date Received _Syl. O. Barbee 6-21-15_
This form was received on _____ (date), pursuant to **Step Two**. Is it an Emergency? __ (Yes or No).
Staff Who Received Step Two Grievance: _____ Date: _____
Action Taken: _____ (Forwarded to Grievance Officer/Warden/Other) Date: _____
If forwarded, provide name of person receiving this form: _____ Date: _____
--------------------------------------------------------------------
**DISTRIBUTION: YELLOW & PINK** - Inmate Receipts; **BLUE** - Grievance Officer; **ORIGINAL** - Given
back to Inmate after Completion of Step One and Step Two.

RECEIVED
JUL 06 2015
INMATE GRIEVANCE SUPERVISOR
ADMINISTRATION R. D

*BK-7*

IGTT400
3GR

*Attachment II*

# ACKNOWLEDGMENT OR REJECTION OF UNIT LEVEL GRIEVANCE

TO: Inmate  __Barbee, Sylvester__
FROM:  Bailey, Beatrice M
DATE:  __06/25/2015__

ADC #:  __131311C__
TITLE:  __ADC Inmate Grievance Coord__
GRIEVANCE #:  __EA-15-01329__

Please be advised, I have received your Grievance dated __06/18/2015__ on __06/25/2015__ .
You should receive communication regarding the Grievance by __07/23/2015__

Signature of ADC Inmate Grievance Coord

## CHECK ONE OF THE FOLLOWING

- ☞ This Grievance will be addressed by the Warden/Center Supervisor or designee.
- ☞ This Grievance is of a medical nature and has been forwarded to the Health Services Administrator who will respond.
- ☞ This Grievance involves a mental health issue and has been forwarded to the Mental Health Supervisor who will respond.
- ☞ This Grievance has been determined to be an emergency situation, as you so indicated.

- ☞ This Grievance has been determined to not be an emergency situation because you would not be subject to a substantial risk of personal injury or other serious irreparable harm. Your Grievance will be processed as a Non-Emergency.
- ● This Grievance was REJECTED because it was either non-grievable ( ), untimely, was a duplicate of , or was frivolous or vexatious.

## INMATE'S APPEAL

If you disagree with a rejection, you may appeal this decision within five working days by filling in the information requested below and mailing it to the appropriate Chief Deputy/Deputy/Assistant Director. Keep in mind that you are appealing the decision to reject the original complaint. Address only the rejection; do not list additional issues, which were not a part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below. THE STORAGING OF THE FOOD THAT CAUSED THE CONTRACTION IS TO BE HELD AT 45° AND NOT 44°, WHICH IS WHAT INDEED ALLOWED THE CONTAMINATED STATE TO MANIFEST AND THE ISSUE(S) IN THIS GRV. ARE IMPERATIVE TO MY CURRENT CONDITION OF ADVERSE REACTION(S) WHICH A.R. 600 IS TO BE IMPLEMENTED, W/O UNDUE DELAY THAT SMARJESSI & WEEKLY ARE OBLIGATED TO ENSURE.

| Sylvester O. Bale | 131311 | 6-28-15 |
| Inmate Signature | ADC # | Date |

*CU-12-02823*
*OTR-14-00368*

RECEIVED

JUL 0 6 2015

INMATE GRIEVANCE SUPERVISOR
ADMINISTRATION BUILDING

IGTT405
3GT

( Doc.#, Pg.11 of 29, #3 )

# ACKNOWLEDGEMENT OF GRIEVANCE APPEAL
## or REJECTION OF APPEAL

TO:  Inmate  <u>Barbee, Sylvester</u>          ADC #:  <u>131311C</u>
FROM: <u>Reed, Marshall (Dale) D</u>          TITLE: <u>Chief Deputy Director</u>
RE: Receipt of Grievance <u>EA-15-01329</u>     DATE: <u>07/06/2015</u>

Please be advised, the appeal of your grievance dated
<u>06/18/2015</u>
was received in my office on this date  <u>07/06/2015</u>

**You will receive communication from this office regarding this Grievance by**  <u>08/17/2015</u>

☐ The time allowed for appeal has expired
☐ The matter is non-grievable and does not involve retaliation:
    ☐ (a) Parole and/or Release matter
    ☐ (b) Transfer
    ☐ (c) Job Assignment unrelated to medical restriction
    ☐ (d) Disciplinary matter
    ☐ (e) Matter beyond the Department's control and/or matter of State/Federal law
    ☐ (f) Involves an anticipated event
☐ You did not send all the proper Attachments:
    ☐ (a) Unit Level Grievance Form (Attachment 1)
    ☐ (b) Warden's/Center Supervisor's Decision (Attachment III); or Health Services Response Attached (Attachment IV for Health Issues Only)
    ☐ (c) Did not give reason for disagreement in space provided for appeal
    ☐ (d) Did not complete Attachment III or IV with your name, ADC#, and/or date
    ☐ (e) Unsanitary form(s) or documents received
→ ☐ (f) This Appeal was REJECTED because it was a duplicate of , or was frivolous or vexatious

↖ Never Was Rejected By Grievance Administration, Therefore Was Allowed To Exhaust To Recieve A Response, Which Was Disregarded on The Merit's of The Factual Grievance (See Attached, Sworn Declaration of Ms. Smartjessi & Ad. Dir.12-16 Pg(s) 11,12 &18 of 29). Allowing The Exhaustion Process To Take It's Course, In Regard(s) To Her Personal Involvement Within The Complaint, Pursuant To Hammett v. Cofield, 681 F. 3d 945 (8th Cir. 2012).

IGTT430
3GD                                                                                  Attachment VI

| INMATE NAME: Barbee, Sylvester | ADC #: 131311 | GRIEVANCE#:EA-15-01329 |

**CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION**

June 18, 2015, you grieved," Administrative Refg. 600 State "Clearrly that Angelika Smarjessi is to ensure, as well as Employee's (john & Jane Doe) involved & associated with the food service Dept. In procurement, storage preparation, also the utilization of food service supplies are to ensure tasteful, nutrtzous meal's and implement the safety & sanitation requirement's for food service program's which Ms. Smarjessi did not by keeping, as well as Aundrea Weekly the already contaminated egg's at the set degree of 44* in the kitchen that is to meet established Federal & state code's requirement's This reckless disregard caused a food borne disease that I contracted Cerro & anatom serotype's for 59 day's."

June 25, 2015, your complaint was rejected at the unit level because it was a duplicate of CU-12-02823 and OR-14-00368; furthermore, this is an untimely matter and needs no further discussion.

You have failed to follow the grievance policy by submitting a complaint that is untimely and a duplicate that has been previously appealed and addressed. Therefore, I will not address the merits of your appeal, which is denied.

_____         7-25-15
Director                                 Date

**UNIT LEVEL GRIEVANCE FORM** (Attachment I)

Unit/Center _E.A.R.U._

Name _SYLVESTER O. BARBEE_

.DC# _131311_   Brks # _1-58_   Job Assignment _B/U_

FOR OFFICE USE ONLY
GRV. # _EH-15-01747_
Date Received: _8-14-15_
GRV. Code #: _600_

_8-6-15_ (Date) STEP ONE: Informal Resolution

_8-13-15_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: _THE ADVERSE REACTION(S) FROM SUCH ACT(S) OF OMISSION CAUSED THE CONTINUATION OF PAIN W/O MED(S) THUS ON 7-26-15 I SHOULD HAVE BEEN_
_____, (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to _PROVIDED_ a substantial risk of physical harm: emergency grievances are not for ordinary problems that are not of serious _TREATMENT_ nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the _FOR MY_ attached emergency receipt. In an Emergency, state why: _CONTRACTI-_

*Is this Grievance concerning* (Medical) *or Mental Health Services?* _YES_ If yes, circle one: medical or mental
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected. (Please Print): _I HAVE BEEN SCHEDULED 3 TIME(S) FOR X-RAY(S) AND BLOOD WAS TAKEN (3 TUBE(S)) IN REGARD(S) TO MY CONTINUATION OF ADVERSE REACTION(S) FROM A CONTRACTION TO SEROTYPE(S) (FERRO & AKATUM), DUE TO TROY MOORE(S) AND MARIE AUSTIN(S) DELIBERANCE TO MY MEDICAL CONDITION, WHICH I WAS TESTED AND EVALUATED THE ABOVE MENTIONED TIME(S), ALSO ON 7-26-15, BUT TO NO AVAIL HAVE I BEEN COUNSELED WITH ON THE RESULT(S), NOR GIVEN ANY FORM OF MED(S) FOR MY PAIN IN MY STOMACH AND PUR. A.D. #833, I'M ENTITLED TO ADEQUATE MEDICAL TREATMENT._

RECEIVED - DEPUTY DIRECTOR
ARKANSAS DEPARTMENT OF CORRECTION

SEP 29 2015

HEALTH & CORRECTIONAL PROGRAMS

Inmate Signature _Sylvester O. Barbee_          Date _8-6-15_

*If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee.*

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**
This form was received on _8/7/15_ (date), and determined to be **Step One** and/or an Emergency Grievance
_____ (Yes or No) This form was forwarded to medical or mental health? _(Yes or No)_. If yes, name of the person in that department receiving this form: _____ Date _____

PRINT STAFF NAME (PROBLEM SOLVER) _____   ID Number _0856_   Staff Signature _____   Date Received _8/7/15_

Describe action taken to resolve complaint, including dates: _You were ordered labs on 7/7/15_ _____

Staff Signature & Date Returned _____          Inmate Signature & Date Received _____

This form was received on _____ (date), pursuant to **Step Two**. Is it an Emergency? _____ (Yes or No).
Staff Who Received Step Two Grievance: _____   Date: _____
Action Taken: _____   (Forwarded to Grievance Officer/Warden/Other) Date: _____
If forwarded, provide name of person receiving this form: _____   Date: _____

**DISTRIBUTION: YELLOW & PINK** - Inmate Receipts; **BLUE** - Grievance Officer; **ORIGINAL** - Given back to Inmate after Completion of Step One and Step Two.

Date Mailed _08/13/15_

IGTT420
3GH

1/58                                    Attachment IV

INMATE NAME: Barbee, Sylvester       ADC #: 131311C       GRIEVANCE #: EA-15-01747

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

(652) You submitted a grievance on 8/6/2015 stating you have been scheduled 3 times for x ray and blood taken. You state you have not received the results, been counseled with or been given any form of medication for your abdominal pain.

You were seen on 7/17/2015 for follow up of chest xray and abdominal pain by APN Drummond. He noted your abdomen to be soft and non tender with bowel sounds X4. No rebound and no guarding. He ordered an abdominal xray at that time and lab. Your abdominal xray was completed and you were referred for follow up per Ms. Keys informal response. You have not been seen for that follow up and you have been referred to the provider again for x ray follow up. Your grievance is found with merit but resolving.

_Tammy Hinkle_

Signature of Health Services
Administrator/Mental Health Supervisor or
Designee

Registered Nurse                    09/14/2015
_____                    _____
Title                               Date

**INMATE'S APPEAL**       This Response Was Received on 9-17-15

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE?

Because I Should Have Never Contracted Salmonella Serotype(s) (Anatum & Cerro), While Being Housed Within The A.D.C. That Caused This Continuation of Adverse Reactions For Me To Have To Be Prescribed Radiology Examinations on 7-26-15 ▮▮▮▮▮S on My Upper Torso By Marc Akobuluyz (M.D. Ph.D) And on 6-17-15 Two Chest X-Ray(s) By Guy Takahasi (M.D.).

RECEIVED - DEPUTY DIRECTOR
ARKANSAS DEPARTMENT OF CORRECTION

SEP 29 2015

_Sylvester O. Barbee_                        131311          9-  17  -15
Inmate Signature HEALTH & CORRECTIONAL PROGRAMS    ADC#            Date

IGTT420                      Page 1 of 1

IGTT430
3GD

Attachment VI

INMATE NAME: Barbee, Sylvester          ADC #: 131311          GRIEVANCE#:EA-15-01747

## CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

On August 6, 2015, you grieved that you have been scheduled for x-rays three times and have not had them done. You state that you had blood work done and you have not received the results or medication for your stomach pain.

The medical department responded, "You were seen on 7/17/2015 for follow up of chest x-ray and abdominal pain by APN Drummond. He noted your abdomen to be soft and non tender with bowel sounds X4. No rebound and no guarding. He ordered an abdominal x-ray at that time and lab. Your abdominal x-ray was completed and you were referred for follow up per Ms. Key's informal response. You have not been seen for that follow up and you have been referred to the provider again for X ray follow up. Your grievance is found with merit but resolving."

Your appeal states that you never should have contracted Salmonella while being housed in the ADC that caused the continuation of adverse reactions. You state that you have continued to be prescribed radiology examinations on your upper torso and chest.

According to policy, "The Unit Level Grievance Form should only address one problem/issue and not multiple problems/issues. An inmate must use a separate form for each issue. Only one issue will be addressed." I will only be addressing the issue regarding your x-rays.

According to the grievance policy, an appeal cannot raise new or additional issues or complaints.

According to your electronic medical records, your abdominal x-ray was ordered on July 17, 2015 and performed on July 17, 2015. Your chest x-ray was ordered on July 20, 2015 and taken on July 20, 2015. You were seen on September 23, 2015 by APN Campbell for a follow up of x-rays and CT scan. APN Campbell ordered a repeat CT of the chest in three months, follow up pending CT results, and place a sick call as needed.

This appeal is without merit.

_____          Date   11/6/15
Director



**Arkansas Department of Correction**

PO Box 8707
Pine Bluff, AR 71611-8707
Phone: 870-267-6200
Fax:    870-267-6244
www.adc.arkansas.gov

# ADMINISTRATIVE DIRECTIVE

**SUBJECT:  Inmate Grievance Procedure**

**NUMBER:   12-16**                    **SUPERSEDES:   10-32**

**APPLICABILITY:  All employees and inmates**        **PAGE 1 of 29**

**REFERENCE:  AR 835 - Grievance Procedure for Offenders**

**APPROVED:**                    **EFFECTIVE DATE 05/28/2012**

---

## I.   POLICY:

It is the policy of the Arkansas Department of Correction to provide inmates in its custody an administrative mechanism for the resolution of complaints, problems and other issues.

## II.   EXPLANATION:

A grievance procedure is an administrative means for the expression and resolution of inmate problems and complaints.  The mechanism is designed to solve the problem at the lowest level, as immediately as feasible, and in a manner that is fair, reasonable and consistent with the Department of Correction's mission.

The administrative mechanism for the resolution of complaints and identification of problem areas is intended to supplement but not replace daily or routine communication between staff and inmates.

## III.   DEFINITIONS:

A.   <u>Informal</u> <u>Resolution</u> – the first step involving a written complaint (Unit Level Grievance Form, Attachment I) by an inmate that is intended to allow staff the opportunity to resolve an issue on an informal basis; and to serve as a prerequisite

EXHIBIT
A

Case 5:15-cv-00381-BRW   Document 1   Filed 12/03/15   Page 16 of 38
Case 5:14-cv-00265-JLH-JWC   Document 122-1   Filed 07/20/15   Page 11 of 29

| AD 12–16 Inmate Grievance Procedure | Page 11 of 29 |

G.   Steps to Appeal the Unit Level Grievance Decision:

After receiving a response from the Warden, the Health Services Administrator (HSA), the Mental Health Supervisor, or designees, if the inmate is not satisfied, he or she may appeal within five (5) working days to the appropriate Chief Deputy/Deputy/Assistant Director who will attempt to resolve the matter or assign an appropriate staff member to do so.

1.   The appeal must be written in the space provided on the original Warden/Center Supervisor's Decision Form (Attachment III), the Health Services Response to Unit Level Grievance Form (Attachment IV) for medical or mental health grievances entitled Inmate's Appeal (see Attachment III and IV), or the Acknowledgement or Rejection of Unit Level Grievance (Attachment II). Only what is written in the space provided for appeal will be considered part of the grievance appeal. Additional sheets should not be attached and will be returned to the inmate upon receipt of the appeal or as soon as practical. ONLY THE STATEMENT IN THE SPACE PROVIDED WILL BE MAINTAINED AND CONSIDERED PART OF THE APPEAL SUBMISSION.

2.   The inmate must include the original Unit Level Grievance Form (Attachment I), which describes the matter originally grieved, and either the Warden/Center Supervisor Decision Form (Attachment III), the Health Services Response to Unit Level Grievance (Attachment IV), or the Acknowledgement or Rejection of Unit Level Grievance (Attachment II) if the inmate is asserting the grievance was improperly rejected or if the inmate did not receive a response or extension within the timeframe. If these two (2) pages are not submitted with the inmate's appeal portion completed, the appeal may be returned to the inmate as rejected.

→ ★   To complete the appeal, the inmate must state a reason for disagreeing, and must date, sign, and write the inmate's ADC number on the attachment being appealed.

Do not list additional issues, requests and/or names which were not a part of the original grievance as they will not be addressed.

→ ★ 3.   [handwritten: ALLOWING THE EXHAUSTION PROCESS TO TAKE ITS COURSE.] The Chief Deputy/Deputy/Assistant Director may process grievance appeals not meeting the criteria set forth above when necessary for the safety and security of the Department; however, further processing of the appeal where the inmate has failed to complete the required steps is at the sole discretion of the appropriate Chief Deputy/Deputy/Assistant Director.

4.   Appeals relating to medical, mental health or treatment program issues are submitted to the Deputy Director for Health and Correctional Programs.

→ ✱ All other grievances will be forwarded to the appropriate Chief Deputy/Deputy/Assistant Director for Institutions.

→ ✱ All Appeals will be answered by the Chief Deputy/Deputy/Assistant Director regardless of whether those individuals are named in the grievance.

5.  Receipt of the appeal shall be acknowledged or rejected in writing within five (5) working days to the inmate by the Chief Deputy/Deputy/Assistant Director's Office (see Attachment V) unless a written response can be provided within five (5) working days to the grievance signed by the Chief Deputy/Deputy/Assistant Director.

6.  The Chief Deputy/Deputy/Assistant Director will respond in writing to the inmate concerning the decision within thirty (30) working days unless there is an extension or the appeal is rejected and the inmate is notified of the reason for rejection on the Acknowledgment of Grievance Appeal/Rejection of Appeal form (see Attachment V). A written decision or rejection of an appeal at this level is the end of the grievance process.

7.  If a grievance appealed is a duplicate of one previously appealed by the inmate with regard to the staff member named, the date of the incident, and the subject of the grievance, the inmate will be sent an Acknowledgment of Grievance Appeal/Rejection on Attachment V, and it will be noted as "Duplicate of _____" and the earlier grievance number will be filled in the blank; the duplicate will be returned to the inmate with the Attachment V.

8.  The Grievance Extension Form will be used in cases where a longer period of time is required for a response or resolution of the problem. The inmate shall be notified by the responding authority, in writing, of the reason for the delay and its expected length on the Grievance Extension Form (see Attachment X). Time limits for responding will be extended automatically upon completion of the Grievance Extension Form (Attachment X), unless the inmate disagrees in writing to the extension. If the inmate does not agree to the extension, the inmate understands and agrees that, with that decision, no further action will be taken on the issue, and the grievance appeal will be returned to the inmate without a decision on its merit. By disagreeing with the extension, the inmate waives his or her right to have the grievance issue considered or exhausted.

9.  The entire grievance procedure should be completed within seventy-six (76) working days unless a valid extension has been executed, or it can be documented that unforeseen circumstances have occurred.

6.    No entries concerning grievances, or an inmate's participation in a grievance proceeding through testimony or submission of evidence, shall be recorded in the inmate's paper institutional file.

7.    Only those positions authorized by the appropriate Chief Deputy/Deputy/Assistant Director will have access to the Grievance Tracking Program.

M.   Evaluation

1.    Monthly, quarterly and annual reports may be generated from the tracking system.

2.    Records of staff efforts at problem solving may be considered by supervisors evaluating the performance of staff.

N.   Prison Litigation Reform Act Notice

Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit and Claims Commission claim.  If this is not done, their lawsuits or claims may be dismissed immediately.

Inmates must attach a copy of the Chief Deputy/Deputy/Assistant Director's response to any petition or complaint; otherwise the court or commission may dismiss the case without notice.

Inmates are also advised that they shall be subject to paying filing fees in Federal Court pursuant to the Prison Litigation Reform Act of 1996.

V.   **REFERENCES:**

ACA Standards:  4-4127, 4-4284, 4-4394
Prison Litigation Reform Act of 1995

VI.   **ATTACHMENTS:**
Attachment I – Unit Level Grievance (Informal Resolution/Formal Grievance/Emergency Grievance)
Attachment II – Acknowledgment of Unit Level Grievance
Attachment III – Warden/Center Supervisor's Decision/Inmate Appeal
Attachment IV – Health Services Response to Unit Level Grievance
Attachment V – Acknowledgment of Grievance Appeal/Rejection of Appeal
Attachment VI – Chief Deputy/Deputy/Assistant Director's Decision
Attachment VII – Grievance Codes
Attachment VIII – Inmate Grievance Investigation Worksheet
Attachment IX – Grievance Waiver
Attachment X – Grievance Extension



ORCU Legal Use Only

EXHIBIT F-7

Administrative Regulation 833

Health Services
Board Approval Date: 8-30-90 ; Supersedes: 809, 824, 842, 855 ; Effective Date: 4-2-90
(I) Authority: The Board Of Correction Is Vested With The Authority To Promulgate This Administrative Regulation By Act 50 Of 1968 As Amended.
(II) Purpose: This Administrative Regulation Establishes The Mission, Components, Adherences To Appropriate Standards And Review Mechanisms For The Provision Of Health Care Services In The Dept.
★ (III) The Administrative Regulation Applies To All Providers Of Health Care To Inmates. It Also Applies To Administrators And Staff Making Referrals And Affected By Recommendations Of Health Care Providers.
→ ★ (IV) Definition: (A) "Health Care" Refers To The Variety Of Goods, Services, Personnel And Procedures Involved In Providing The Full Range Of Prevention, Evaluation And Treatment Of Dental, Medical & Mental Disorders.
— ★ (B) "Provider" Refers To Any Health Care Organization, Administrator, Professional Para Professionals Or Members Of Support Staff, Whether Employed By The Dept. Under Contract To The Dept. Or Paid On A Fee-For-Service Basis, Providing Health Care Services To Inmate(s).
— ★ (C) "Accessible" Has A Range Of Meanings Depending On The Acuteness And Seriousness Of The Health Disorder, But Generally Means That An Inmate Will Be Placed In Contact With Health Care Staff Qualified To Evaluate And Or Treat The Presenting Complaint Without Undue Delay.
— ★ (D) "Reasonable And Necessary" Means That Any Treatable Problem Which Significantly Impairs The Functioning Of The Individual And Or Presents A Risk Of Contagion To Others And Or Which Is Likely To Worsen Or Cause Unnecessary Suffering Without Treatment. Will Be Evaluated And Treated According To The Current Community & Professional Standards And Practices Of Health Care.
— ★ (V) Policy: It Shall Be The Policy Of The Dept. To Provide Health Care Services Accessible To All Inmates Which At A Minimum, Meet Reasonable And Necessary Health Care Needs.
(VI) (A) Each Service Shall Be Administered From Within The Dept. Of Corr. In Such A Way As To Insure Proper Care Of Inmates, Effective Working Relations With ▇▇ Other Divisions And Staff, Program Consistency With The Mission And Methods Of The Dept.



Ex. F-7

(B) Each Administratively Seperate Health Care Services Shall Establish Policy And Procedures Consistent With Applicable Standards Regulating The Professional Pract -ices Of That Service.

(C) Each Service Shall Establish A Staffing Pattern, Whether Based On Funded Positi -ons, Contract, Or Fee-For-Service, That Ensures An Adequate Number Of Staff To Make Services Readily Available And Proper Credentialing To Ensure Quality Of Care.

(D) Each Service Shall Ensure That All Inmates Entering The Dept. Are Screened, Their Health Status Documented And That Referals For Treatment Are Made Promptly When Serious Needs Exist.

(E) Each Service Shall Establish Procedures For Inmate Access To Necessary Services That Are Not Provided Within The Confines Of The Dept. When Transfered To Another Facility Is Required, Procedure Must Address My Impact On Liberty Interest And Or Stigmatization.

★ (F) Each Service Shall Have Policy And Supporting Documentation Addressing Issues Of Informed Consent About Procedures The Principle Of Least Restrictive Or Intrusive Treatment And The Right To Refuse Treatment.

(G) Each Service Shall Keep Proper Records Of Health Needs And Service Delivery. Proced -ures Will Be Written For Safe Guard Confidentialty And For Informed Consent For Release Of Information.

(H) Each Service Shall Have A Mechanism For Handling Request And ▬ Grievances In Such A Manner As To Assure Prompt Attention To Needs And Rapid Resolutions Of Prob -lems.

(I) Each Service Shall Have Formal Lines Of Communication With The Warden / Center Supervisor To Ensure Proper Notification Concerning Health Needs, Health Care Reco -mmendations And Incidents Relating To Health Care Services. This Line Of Commu -nication Shall Also Provide For Regular Meetings To Resolve Problems And Conflicts.

(J) Medical Services Shall Have Procedures For Dealing With The Special Need Inmates, Such As The Aged, Chronically Ill And Those Having Severely Limited Perceptual Or Motor Abilities.

★ (L) Each Service Shall Establish Some Mechanisms Of Quality Review And Or Certification To Ensure That The Service Is Adequately Providing For The Needs Of The Inmate Population.

— ★ (M) Each Service Shall Provide For Training Of Staff And Inmates In Disease Prophylaxis, Recognition Of Problems, Response To Emergency Health Programs And Health Care Problems.

ORCU Legal Use Only

Ex. F-7

(VII) "Standards For Health Services In Prison", "National Communication On Correction -al Health Care, 1987." "Certification Standards For Health Care Programs", American Correctional Association, 1989. Act 507 Of 1981, 12-29-405 (References)

ORCU Legal Use Only



# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

SYLVESTER O. BARBEE, ADC #131311                           **PLAINTIFF**

v.                                    **NO. 5:14-CV-265 JLH/JWC**

CHERI ELLIS, et al.                                        **DEFENDANTS**

## DECLARATION OF ANGELIKA SMARJESSE

I, Angelika Smarjesse, am employed by the Arkansas Department of Correction as Food

Production Manager at its Cummins Unit.  I have held this position for approximately nine (9)

years.  At all times relevant to this declaration, I held the position of Food Production Manager at

the ADC's Cummins Unit.  I have personal knowledge regarding the following facts and I am

competent to testify.

1.  I am aware that Plaintiff, Sylvester Barbee, ADC#131331, filed the above-
    captioned lawsuit regarding his exposure to salmonella at the Cummins Unit in
    August 2012.

2.  My job duties and responsibilities include overseeing the operation of the kitchen,
    which includes supervising five (5) other Food Production Supervisors, <u>ordering</u>
    <u>food used in inmate meals</u>, <u>ensuring proper food deliveries</u>, and ensuring proper
    hygiene with kitchen staff, including inmate-kitchen staff (hairnets, gloves, and
    sanitization), and conducting weekly safety meetings.  <u>I also meet with the</u>
    <u>Deputy Warden for weekly kitchen inspections.</u>

✗ 3.  Cummins Unit inmates prepare and cook the food for the prison inmates and
    prison staff under the supervision of a Food Preparation Supervisor.  <u>Some of the</u>
    <u>food served contains eggs that are grown locally at the unit's hen house.</u>

SALMONELLA IS ALREADY IN FOOD BEFORE COOKED, SO SHE FAILED TO
ENSURE ADEQUATE FOOD DELIVERIE(S), ORDER(S), PREPARATION AND
SERVICE(S) ALSO INSPECTION(S)



#36

4. I am not involved in the actual food preparation or cooking.

5. During the salmonella occurrence, all inmates that had been symptomatic and assigned to the food service area were prohibited from working in the kitchen area.

6. Weekly inspections were still conducted in the kitchen and I stayed in contact with Aundrea Weekly, Deputy Warden at that time, to ensure that inmates who were assigned to the kitchen were cleared by medical before they could continue their kitchen assignments in an effort to prevent the spread of illness and to ensure that they kitchen area was running smoothly.

7. ADC employees are not involved in the day-to-day delivery of medical services. Qualified clinicians handled this responsibility based upon a contract between the ADC and Corizon, Inc., and currently handle this responsibility based upon a contract between the ADC and Correct Care Solutions.

8. I had no reason to believe that any of the food items served at the Cummins Unit contained salmonella.

9. I had no reason to believe that the food was prepared by the inmates in a manner that presented an immediate danger to Barbee's health.

10. The Arkansas Department of Health (ADH) conducted an inspection during August 2012.

11. The ADH recommended several measures to limit further salmonella transmission and to prevent future foodborne outbreaks in the overall Arkansas Department of Correction prison system.

AUG. 1ST WAS 1ST COMPLAINT WHICH REQUES EVERY PART & NOT I TESTED POSSTOVE THE 2ND TIME MONTH A PER DAYS LATER



2

12. The measures recommended included improving the prison kitchen infrastructure, promoting hand hygiene, mandating food safety training for free-world kitchen staff and inmates, proper cleaning and sanitization of the kitchen, compliance with safe food preparation and storage practices, and follow-up testing of inmates with laboratory-confirmed salmonella who work in the prison kitchen.

13. Changes were made to the inmate-cook's worksheet to ensure that staff is taking temperature checks during the cooking and cooling process and documenting those checks as required for each meal prepared by the inmates. Based upon the recommendations made by the Arkansas Health Department, these changes were implemented and I contacted Warden Gaylon Lay on or about September 5, 2012 to let him know of the corrective action that would be taken to prevent a similar occurrence.

14. A staff meeting was held with all kitchen supervisors to ensure that they were aware of the recommendations and to make sure that the measures were implemented.

15. Once inmates were cleared to return to work, food-safety training sessions were implemented and a final training was held on October 4, 2012. The topics addressed at the training were "Time and Temperature Control for Food Safety," "Worker Health and Hygiene," and "The Right Direction for Preventing Cross-Contamination."

16. There has not been another salmonella outbreak at the Cummins unit since the one giving rise to this lawsuit.



3

I swear, under the penalty of perjury, that the foregoing statements are true.

ANGELIKA SMARJESSE

6 - 3 - 2015
DATE

4

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

SYLVESTER O. BARBEE, ADC #131311                          PLAINTIFF
v.                              NO. 5:14-CV-265 JLH/HDY

CHERI ELLIS, et al.                                      DEFENDANTS

## DECLARATION OF AUNDREA WEEKLY

I, Aundrea Weekly, was employed by the Arkansas Department of Correction (ADC), as Warden at the Grimes Unit. I recently retired from the ADC, where I was employed for approximately twenty-six (26) years. At all times relevant to this declaration, I held the position of Deputy Warden over Operations and Treatment at the Cummins Unit. I have personal knowledge regarding the following facts and I am competent to testify.

1. I am aware that Plaintiff, Sylvester Barbee (ADC#131311), has filed the above-captioned lawsuit against me regarding his exposure to salmonella at the Cummins Unit in August 2012.

2. My job duties and responsibilities as Deputy Warden included making weekly inspections in the kitchen, where I met with the Food Production Manager and checked equipment temperatures, checked cooking tools to ensure sanitization, and ensured proper hygiene with kitchen staff, including inmate-kitchen staff (hairnets, gloves, and sanitization).



*IF YOU WERE COOR. TO IDENTIFY WHY WASN'T I ISSUED MED. IN AFTER MY FIRST POSITIVE TEST BY A.D.H.*

*(SEE A.D.H. QUESTIONAIRE)*

*(SEE EX. B)*

3. Cummins Unit inmates prepared and cooked the food for the prison inmates and prison staff under the supervision of a Food Preparation Supervisor. Some of the food prepared served contains eggs that are grown locally at the unit's hen house.

4. During the salmonella occurrence, I was involved with coordinating with infirmary staff to identify those persons who were ill or had complaints of feeling sick.

5. All inmates that had been symptomatic and assigned to the food service area were prohibited from working in the kitchen area.

6. I also continued to conduct weekly inspections in the kitchen and stayed in contact with the Food Production Manager, Angelika Smarjesse, to ensure that inmates who were assigned to the kitchen were cleared by medical before they could continue their kitchen assignments in an effort prevent the spread of illness and to ensure that the kitchen area was running smoothly.

7. ADC employees are not involved in the day-to-day delivery of medical services. Qualified clinicians handle this responsibility based upon a contract between the ADC and Corizon, Inc. at the time of inmate Barbee's allegations.

8. I am not a physician, nor do I have formal medical training.

9. I do not supervise Corizon employees.

10. I am not licensed to provide, nor did I provide medical care to any ADC inmate.

11. I have not provided medical care to Sylvester Barbee, nor any ADC inmate.

12. I had no reason to believe that any of the food items served at the Cummins Unit contained salmonella.

2


#26

*(handwritten margin note: DUE TO CHERI ELLIS RECKLESS INDIFF.)*

13. I had no reason to believe that the food was prepared by the inmates in a manner that presented an immediate danger to Barbee's health.

*(handwritten margin note: EX F1 F2 2 SEROTYPES 51 DAYS)*

14. The Arkansas Department of Health recommended several measures to limit further salmonella transmission and to prevent future foodborne outbreaks in the overall Arkansas Department of Correction prison system.

15. The measures recommended included improving the prison kitchen infrastructure, promoting hand hygiene, mandating food safety training for free-world kitchen staff and inmates, proper cleaning and sanitization of the kitchen, compliance with safe food preparation and storage practices, and follow-up testing of inmates with laboratory-confirmed salmonella who work in the prison kitchen.

*(handwritten margin note: A.P IF EVERYTHING WAS DONE CORRECTLY THERE WOULDN'T HAVE BEEN AN OUTBREAK)*

16. Changes were made to the inmate-cook's worksheet to ensure that staff is taking temperature checks during the cooking and cooling process and documenting those checks as required for each meal prepared by the inmates. Based upon the recommendations made by the Arkansas Health Department, on or about September 13, 2012, I contacted Warden Gaylon Lay and kept him informed of the corrective action that had been taken to prevent a similar occurrence.

17. A staff meeting was been held with all kitchen supervisors to ensure that they were aware of the recommendations and to make sure that the measures were implemented.

3



18. Once inmates were cleared to return to work, food-safety training sessions were implemented and a final training was held on October 4, 2012. The topics addressed at the training were "Time and Temperature Control for Food Safety," "Worker Health and Hygiene," and "The Right Direction for Preventing Cross-Contamination."

19. To my knowledge, there has not been another salmonella outbreak at the Cummins unit since the one giving rise to Barbee's allegations.

I swear, under the penalty of perjury, that the foregoing statements are true.

_Aundrea Weekly_
AUNDREA WEEKLY

_5/29/15_
DATE

4



## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

SYLVESTER O. BARBEE, ADC #131311                              **PLAINTIFF**

v.                               **NO. 5:14-CV-265 JLH/HDY**

CHERI ELLIS, et al.                                          **DEFENDANTS**

## DECLARATION OF CHERI ELLIS

I, Cheri Ellis, am employed by the Arkansas Livestock & Poultry Commission (ALPC),

as Agricultural Commodity Compliance Supervisor, where I supervise approximately 32 people,

who are graders at various plants. I have held this position at ALPC since 2009. I have worked

at ALPC since 2002, where I previously worked as a grader. I have personal knowledge

regarding the following facts and I am competent to testify.

1. I am aware that Sylvester Barbee (ADC#131311), has filed the above-captioned

   lawsuit against me regarding his exposure to salmonella at the Cummins Unit in

   August 2012.

2. I have never met inmate Sylvester Barbee.

3. My job duties and responsibilities include conducting egg inspections for the

   United States Department of Agriculture of different facilities in Arkansas. I am

   licensed to conduct these inspections.

4. When I was employed as a grader, my job consisted of working all day at an egg

   plant, where I graded product to ensure that the product met the required quality

   standard. Dirty eggs or broken eggs were removed and put into lower grade

   standard, and then sent to a breaker plant, which uses these lower-grade eggs for

   various purposes, such as liquid or dried egg products, or disposed of properly.

*[handwritten annotation: Egg's Dian't Meet Required Quality Standard* (See Ex. F1 to F-6)]

*[handwritten annotation: #26]*

Such lower-grade eggs were used for these various purposes if they met the requirements to be used as such when they arrived at the breaker plants.

*INSPECTION(S) WERE INADEQUATE & BEING THE REASON FOR THE GROWTH OF THE SALD STRAINS OF SALMONELLAS*

5. During the course of my current duties and responsibilities, I have conducted inspections at the Cummins prison once every three months since 2009. The prisons are not contacted beforehand, and the inspections are done at random. Stated differently, the inspections are meant to be a surprise.

6. I personally inspected eggs at the Arkansas Department of Corrections Cummins Unit in July 2012.

7. When I inspected eggs and currently inspect eggs, eggs are run across a machine called a candling light, which allows plant personnel to stand in front of it and see through the egg's shell, in order to view the interior of the egg. The candling light is about the size of a card table, and it enables them to remove any cracked, dirty, or leaking eggs, as well as any eggs found with interior defects, such as blood spots (interior defects in eggs do not determine disease). Eggs are then randomly sampled and graded by me in front of another small candling light. If there are any dirty eggs, leaking eggs, or cracked eggs, these lower-graded eggs are removed and are sent to a breaker plant. Any eggs that would have been dirty, cracked, or leaking would have been sent to a breaker plant or disposed of within guidelines of regulations and would not have been allowed to be used in food preparation in the Cummins Unit kitchen.

8. During the July 2012 inspection at the Cummins Unit, I also used a certified thermometer to record the temperature of the cooler, as I am required to check the



2


cooler's temperature.  The cooler has to be kept under 45 degrees Fahrenheit, and the temperature reading during this inspection was 44 degrees Fahrenheit.

9. Even if the temperature reading had been above the required amount, all of the product contained in the cooler would have been retained and none would have been allowed to be used in the Cummins Unit kitchen for food preparation.

*(handwritten annotation in left margin: IF EVERY THING IS CORRECT, WHY WAS THERE AN EPIDEMIC)*

10. There was nothing during this inspection to give me any concern or to give me any reason to believe that anything was out of the ordinary.

11. The ALPC does not have a machine that detects salmonella, nor are our employees trained or licensed to detect salmonella or other disease.

12. I am not a physician, nor do I have formal medical training.

13. I did not supervise any medical employees at the prison.

14. I am not licensed to provide, nor did I provide medical care to any ADC inmate.

15. I have not provided medical care to Sylvester Barbee, nor any ADC inmate.

16. I had no reason to believe that any of the food items served at the Cummins Unit contained salmonella.

17. I had no reason to believe that the food was prepared in a manner that presented an immediate danger to Barbee's health.

I swear, under the penalty of perjury, that the foregoing statements are true.



CHERI ELLIS

June 3, 2015
DATE

*(handwritten: #31)*



3



# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

SYLVESTER O. BARBEE, ADC #131311                                    **PLAINTIFF**

v.                                              NO. 5:14-CV-265 JLH/HDY

CHERI ELLIS, et al.                                                 **DEFENDANTS**

### <u>DECLARATION OF DR. DIRK HASELOW</u>

I, Dirk Haselow, am employed by the Arkansas Department of Health (ADH) as State

Epidemiologist and Medical Director for Communicable Disease and also by the University of

Arkansas for Medical Science as an Assistant Professor (Adjunct), in the Departments of

Epidemiology and Pediatrics.  As State Epidemiologist and Medical Director of Communicable

Disease, my job duties and responsibilities include overseeing all surveillance for infectious

diseases conducted by the ADH and managing any clusters or outbreaks of illness as appropriate.

As an Assistant Professor, I teach a course in infectious disease epidemiology that summarizes

the major human pathogens and methods undertaken to control them.  At all times relevant to

this declaration, I have held these positions.  I received my MD from the University of Arkansas

for Medical Sciences in 2008 and received my PhD in Epidemiology from the University of

Maryland in 2002.  I have personal knowledge regarding the following facts and I am competent

to testify.

1. The Arkansas Department of Health (ADH) investigated an outbreak of
   Salmonellosis (salmonella) at the Arkansas Department of Correction's Cummins
   Unit in August 2012.

2. I was involved in the investigation and helped prepare the summary report on
   behalf of ADH Director and State Health Officer.



(SEE Ex. F-1 THRU F-2)

*3. ADH collected stool and food samples for microbiological analysis and conducted

an epidemiologic investigation that included inmate and staff interviews and a

case-control study to identify food items involved in the outbreak.

*4. Laboratory results confirmed the presence of at least five serotypes of salmonella

in inmate stools. (SEE Ex. F-1 & F-2)

*5. Two of the serotypes involved were new to Arkansas.  There is no context as to

where these new serotypes originated.  As to other common serotypes, the origin

of the serotypes is not known.  It is known that there is a linkage in food.

6. The serotype information does not contribute to medical care regarding

salmonella.

*7. There are no produced reports of what strain each inmate had.  Salmonella was

confirmed in inmate stools.  (SEE Ex. F-1 THRU F-3)

8. Salmonella is not detectable by the human eye.

*9. Food testing identified that eggs from the Cummins prison hen house were

contaminated with two exceptionally rare salmonella strains matching those found

in ill inmates at the Cummins Unit.  Cummins uses eggs from its hen house in

preparation of food items served at the unit.  (SEE Ex. F-1 THRU F-5)

10. The investigation included a foodborne disease outbreak questionnaire, asking

inmates to identify any food item eaten from the time of Tuesday, August 7, 2012

through Saturday, August 11, 2012.  (SEE Ex. F-3 & Doc. 100-7)

*11. The results of the investigation indicated that locally grown eggs colonized with

salmonella were, at least in part, a cause of the outbreak.  The investigation

(I HAD 2 SEROTYPES) CERRO & ANATUM

SEE QUESTIONAIRE

#34

2

revealed that several food items served in the prison cafeteria were involved. Further, person-to-person transmission likely accounted for many of the cases. (See Ex. F-5)

12. ADH recommended several measures to limit further salmonella transmission and
X
to prevent future foodborne outbreaks in the overall Arkansas Department of Correction prison system.

13. The measures recommended include improving the prison kitchen infrastructure,
X
promoting hand hygiene, mandating food safety training for free-world kitchen staff and inmates, proper cleaning and sanitization of the kitchen, compliance with safe food preparation and storage practices, and follow-up testing of inmates with laboratory-confirmed salmonella who work in the prison kitchen (symptomatic kitchen workers identified at the time of interview were excluded from kitchen duties until negative for salmonella, which likely prevented ongoing contamination of food served in the prison and limited further person-to-person spread of the illness).

I swear, under the penalty of perjury, that the foregoing statements are true.

DIRK HASELOW, MD, PhD

6/1/15

DATE



3

*Stool*

Entered RS

## Cummins Prison Foodborne Disease Outbreak Questionnaire

Interviewer name: *MB*

**Part I. Demographics:**

Last Name _Barbee_       First Name _Sylvester_       Date of Birth: _10_/_31_/_79_

Age: _32_   Sex _M_ (M/F)

Barracks: _6 A_       Cell#: _____       Bed# _26_       In Isolation: Yes /(No)

What work do you perform at Cummins? _Kitchen_   This month, have you worked in the kitchen? (Yes)/ No

As part of your work do you have contact with animals? Yes/(No)   dishroom, pots, pans — not a food
handler

If yes, specify: _____

**Part II.  Clinical information**

Did you have any symptoms of illness since August 7 ?   (Yes) No

*(August 7 was a Tuesday, and August 15 was the Wednesday before last.)*

What day did your symptoms begin: _Thursday_ _8 - 9 - 15_   ___/___/___   (example: Saturday was 8/11/12)

*Please circle when you began feeling sick:*

| 1 AM | 7 AM | 1 PM | 7 PM |
|------|------|------|------|
| 2 | 8 | 2 | 8 |
| 3 | 9 | 3 | 9 |
| 4 | 10 | 4 | 10 |
| 5 | 11 | 5 | 11 |
| 6 AM | (12 Noon) | 6 PM | 12 Midnight |

**Did you have:**

| | | |
|---|---|---|
| Nausea | (Yes) No | |
| Vomiting | Yes (No) | If yes, what is the largest number of episodes you had in a 24 hour period ? _____ |
| Diarrhea (3 or more stools in 24 hours) | (Yes) No | If yes, what is the largest number of stools you had in a 24 hour period? _7_ |
| Bloody diarrhea | Yes (No) | |
| Abdominal cramps | (Yes) No | |
| Fever | Yes (No) | Highest temperature, if measured: _____ |
| Chills | (Yes) No | |
| Headache | (Yes) No | |
| Body aches | (Yes) No | |
| Fatigue /tiredness | (Yes) No | |
| Dizziness | (Yes) No | |

If other, please specify: _____

Have your symptoms <u>stopped</u>?   Yes/(No) (so, so) improving

If yes, when did your symptoms end?  Date: _8_/___/_2012_   Time___:___ AM/PM

Did you seek medical care or go to sick call?  Yes /(No)  When? Date: _8_/___/_2012_   Time: ___:___ AM/PM

Did you receive intravenous (IV) fluids?  Yes /(No)       Did you provide a stool sample? Yes /(No)

Did you receive any medications?  Yes /(No)  If yes, specify: _____



#40

**Part III. Food:**

What time do you typically eat?   Breakfast 3:45 AM   Lunch 10:30 AM   Dinner: 3:00 PM

Please place an X next to any food item you ate on any of these days:

### Tuesday, August 7th

| Breakfast | | |
|---|---|---|
| Grapefruit Juice | X | |
| Grits | | |
| Biscuits | X | |
| Milk Gravy | ✓ | |
| Scrambled Eggs | ✓ | |
| Frank | X | |
| Milk | | |
| Coffee | | |

| Lunch | | |
|---|---|---|
| Bologna sandwich | | |
| Salisbury Steak | X | |
| Vegetarian Beans | ✓ | |
| Noodles | | |
| Tomatoes | X | |
| Green Beans | X | |
| Rolls | X | |
| Apple Sauce | X | |
| Tea | | |
| Water | X | |

| Dinner | | |
|---|---|---|
| Chicken Spaghetti | X | |
| Vegetarian Beans | ✓ | |
| Tomatoes | X | |
| Green Beans | X | |
| Sliced Bread | | |
| Apples | A | |
| Tea | | |
| Water | X | |

### Wednesday, August 8th

| Breakfast | | |
|---|---|---|
| Apple Juice | | |
| Oatmeal | | |
| Milk Gravy | | |
| Scrambled Eggs | ✓ | |
| Sausage | | |
| Milk | | |
| Coffee | | |

| Lunch | | |
|---|---|---|
| Bologna sandwich | X | |
| Ala King | | |
| Noodles | | |
| Beets | | |
| Green Beans | X | |
| Apple Sauce | X | |
| Tea | | |
| Water | X | |

| Dinner | | |
|---|---|---|
| Baked Chicken | X | |
| Pinto Beans | X | |
| Vegetarian Beans | ✓ | |
| Beets | | |
| Green Beans | X | |
| Sliced Bread | | |
| Apples | X | |
| Tea | | |
| Water | X | |

### Thursday, August 9th

| Breakfast | | |
|---|---|---|
| Orange Juice | ✓ | |
| Grits | | |
| Biscuits | X | |
| Milk Gravy | X | |
| Fried Eggs | X | |
| Sausage | X | |
| Milk | | |
| Coffee | | |

| Lunch | | |
|---|---|---|
| Bologna sandwich | X | |
| Meat Ball Sub | X | |
| Vegetarian Beans | X | |
| Corn on the Cob | X | |
| Tomatoes | X | |
| Squash | | |
| Bun | | |
| Pineapple | X | |
| Tea | | |
| Water | X | |

| Dinner | | |
|---|---|---|
| Oven Fried Turkey Roll | ✓ | |
| Great Northern Beans | X | |
| Vegetarian Beans | X | |
| Greens | | |
| Turnips | | |
| Corn Bread | X | |
| Oatmeal Cookie | X | |
| Tea | | |
| Water | X | |

### Friday, August 10th

| Breakfast | | |
|---|---|---|
| Grapefruit Juice | X | |
| Oatmeal | X | |
| Milk Gravy | X | |
| Scrambled Eggs | X | |
| Sausage | X | |
| Biscuits | X | |
| Milk | X | |
| Coffee | | |
| Jelly | X | |

| Lunch | | |
|---|---|---|
| Bologna sandwich | | |
| Pepper Steak | ✓ | |
| Vegetarian Beans | X | |
| Mashed Potatoes | ✓ | |
| Greens | | |
| Turnips | | |
| Corn Bread | ✓ | |
| Apple Sauce | ✓ | |
| Milk | | |
| Water | X | |

| Dinner | | |
|---|---|---|
| Chicken Salad | X | |
| Pinto Beans | X | |
| Vegetarian Beans | X | |
| Corn on the Cob | X | |
| Tomatoes | X | |
| Sliced Bread | X | |
| Pears | X | |
| Milk | | |
| Water | X | |

### Saturday, August 11th

| Breakfast | | |
|---|---|---|
| Apple Juice | ✓ | |
| Grits | | |
| Hot Cakes | X | |
| Sausage | X | |
| Syrup | X | |
| Milk | | |
| Coffee | | |

| Lunch | | |
|---|---|---|
| Bologna sandwich | | |
| Meatloaf | X | |
| Vegetarian Beans | X | |
| Mashed Potatoes | X | |
| Gravy | X | |
| Cabbage | | |
| Squash | | |
| Rolls | | |
| Pineapple | X | |
| Tea | | |

| Dinner | | |
|---|---|---|
| Baked Chicken | X | |
| Great Northern Beans | X | |
| Vegetarian Beans | X | |
| Corn on the Cob | | |
| Squash | | |
| Sliced Bread | | |
| Apples | X | |
| Tea | | |

Did you eat or drink any food not provided by the cafeteria?  Yes / (No)
   If yes, specify: _____
Did you eat any leftover food from previous days?  Yes / (No)
   If yes, specify: _____
Did you prepare any food in your barracks (e.g. "spread")?  Yes / (No)
   If yes, specify: _____
Do you have any food allergies? Yes /(No)
   If yes, specify: _____
Are there any foods that you do not eat?(Yes)/No
   If yes, specify: TURNIPS, CARROTS, CABBAGE, BEETS

**Part IV. Medical History:**

Do you have any chronic medical conditions?(Yes) / No

Do you have any of the following?   Atherosclerosis or coronary artery disease?          Yes /(No)
                                    Any immunocompromising condition (e.g. HIV)?         Yes /(No)
                                    Any prosthetic devices or vascular grafts?           Yes /(No)
                                    Hemoglobinopathy (e.g. sickle cell disease)?         Yes /(No)

**Part V. Notes:** *(Add any comments not specifically asked on questionnaire)*

_____

41

'LVESTER O. BARBEE #131311

P.o. Box 970

RIANNA, AR 72360

neopost
11/20/2015
US POSTAGE $02.52°

ZIP 72320
041L11227635

TRICT CT. CLERK

ST., Room 1038

TH, AR 72901-2437

AL MAIL